UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. _____

SANDY JULES, individually

    Plaintiff,

vs.

RED LOBSTER RESTAURANTS, LLC,
a foreign limited liability company,

    Defendant.

JURY TRIAL DEMAND

## COMPLAINT

COMES NOW, the Plaintiff, SANDY JULES ("Jules" or "Plaintiff"), by and through the undersigned counsel, files this action against Defendant, RED LOBSTER RESTAURANTS, LLC ("Defendant") and states as follows:

### NATURE OF THE ACTION

1.  This is an action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §1981, and The Civil Rights Act of 1991, based on unlawful employment practices on the basis of race and to provide appropriate relief to Jules who was adversely affected by such practices. Jules alleges that Defendant subjected Jules to a hostile work environment based on her race, Black, and/or national origin, Haitian. Jules further alleges that Defendant was wrongfully terminated based on her race and/or natural origin.

### JURISDICTION, PARTIES, AND VENUE

2.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337 and 1343. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of

the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e5(f)(1) and (3) ("Title VII"), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C § 1981a.

3. Plaintiff is a member of a protected class as an adult black female of Haitian national origin. Plaintiff currently resides in West Palm Beach, Florida.

4. At all material times hereto, Defendant has continuously been a foreign limited liability company doing business in the State of Florida which owns and/or operates restaurants within the Southern District of the United States, specifically, 2201 Palm Beach Lakes Boulevard, West Palm Beach, Florida 33409.

5. Venue is proper in the United States Court of the Southern District of Florida because the Plaintiff resides in, the Defendant conducts business in, and all of the events giving rise to the Plaintiff's claims of the employment practices alleged to be unlawful were committed, in West Palm Beach, Florida which is within the jurisdiction of the United States District Court for the Southern District of Florida.

6. Jules timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). The EEOC issued Jules a Notice of Right to Sue dated July 17, 2017 and received by Jules on July 19, 2017, thereby giving Jules a private right of action in this United States District Court under Title VII. *See* "Right to Sue Letter" attached hereto marked as "Exhibit A."

## STATEMENT OF CLAIMS

7. Plaintiff was hired by Defendant on or around May 22, 2006 as a hostess at its West Palm Beach location to wit: 2201 Palm Beach Lakes Boulevard, West Palm Beach, Florida 33409 (hereinafter Defendant's West Palm Beach Location).

8. On or around September 2007, Plaintiff changed position from hostess to waitress while working at Defendant's West Palm Beach Location.

9. On or around July 2010, Plaintiff moved to Orlando for school and transferred to one of Defendant's Orlando locations to wit: 617 North Alafaya Trail Orlando, Florida 32828.

10. Plaintiff always performed her assigned duties in a professional matter and routinely received positive remarks and the highest ratings on her performance reviews and/or evaluations.

11. On or around September 2015, after almost ten (10) years of employment with Defendant without incident, Plaintiff moved back to West Palm Beach to complete her degree in nursing and transferred back to Defendant's West Palm Beach Location.

12. On her very first day, Plaintiff worked with a white female bartender named Emily Briare ("Briare") who taunted Plaintiff and called her derogatory and degrading when Plaintiff asked her for change for another waitress' table.

13. Plaintiff, shocked that someone she had just met would react so viciously towards her for absolutely no reason, reported Briare's behavior to the manager on duty, Phil. The manager on duty, said he would speak to Briare and then later came back and told Plaintiff Briare said she did not have any issues with and actually liked Plaintiff. Upon information and belief, no further action was taken against Briare.

14. Thereafter, every shift Plaintiff worked with Briare, Briare would harass Plaintiff calling her demeaning and derogatory names.

15. Plaintiff began to realize Briare not only harassed Plaintiff but would also harass other black female waitresses as well but not any of the white female waitresses.

16. On or around late October 2015, Plaintiff again reported Briare's continued discriminatory behavior and harassment to a different manager on duty, Rochelle because Briare was not

harassing any of the white waitresses, only Plaintiff and other black female waitresses, to the point where Plaintiff suffered from anxiety and panic attacks when coming into Defendant's restaurant to work. Rochelle said she would talk to Briare, upon information and belief, Briare was not reprimanded and no further action was taken against Briare.

17. After reporting Briare's behavior twice to two (2) different managers, no action was taken by Defendant against Briare to address Plaintiff's complaints.

18. In fact, after reporting Briare conduct to management, Briare's behavior escalated to the point of becoming physical, Briare would continuously shove Plaintiff while passing her in Defendant's restaurant during their shifts.

19. Other black female employees reported Briare's discriminatory behavior to supervisory and management staff of Defendant, yet no remedial actions were taken to address these complaints.

20. On or around January 2016, Briare violently shoved another black female waitress, Taquanda, in front of several guests and co-workers. The incident was reported to management who did not take any action. The black female waitress also reported this incident to Defendant's corporate office and still no action was taken to correct or even attempt to correct Briare's discriminatory harassing behavior.

21. After a subsequent incident occurred between Briare and Taquanda, although Briare was the instigator, Taquanda was sent home by management and Briare was allowed to remain working and complete her shift.

22. In late January 2016 after Briare cursed and assaulted Plaintiff with a serving tray, Plaintiff again reported Briare's discriminatory behavior and harassment to a third manager, Maria. Plaintiff was so traumatized at this point she was shaking and stuttering barley able to form complete

sentences. Plaintiff explained she was at her breaking point, she could no longer endure the constant repeat harassment at the hands of Briare every single shift with no repercussions to Briare simply because the color of her skin. The manager on duty, Maria, told Plaintiff she would talk with the General Manager about the situation later and when Plaintiff was not around so that Briare would not retaliate against Plaintiff. No action was taken by Defendant against Briare to address Plaintiff's complaints.

23. Plaintiff, who previously excelled at her previous employment at Defendant's Orlando location, began to dread coming to work, suffering from anxiety and panic attacks so much so the Plaintiff would actively try to give her shifts away so as to not have to endure Briare's repeat harassment of her simply because of the color of her skin.

24. The last incident occurred on February 10, 2016, at which time Plaintiff endured repeat and continuous harassment from Briare every single shift they had together for about (4) four months. Plaintiff was in the kitchen speaking to another black female waitress in creole. Briare approached Plaintiff and the other waitress and started harassing the other waitress. In creole, the other waitress informs Plaintiff Briare had been harassing her all day. Plaintiff walked out of the kitchen to check on her tables. Upon walking back into the kitchen, Briare began yelling and cursing at Plaintiff again calling her derogatory and demeaning names. A co-worker who witnessed the attack told Plaintiff not to let Briare get to her. Plaintiff returned to the dining room to check on her tables, but once again upon returning to the kitchen, Briare started attacking Plaintiff verbally, yelling and cursing at her, at the same time the manager on duty walked into the kitchen. Plaintiff, now far beyond her breaking point, confronted Briare telling her that she was sick and tired of her harassment and that if Briare wanted to fight it out with Plaintiff so that Briare

would just leave Plaintiff alone, Plaintiff was willing to fight it out outside. The manager on duty got between Plaintiff and Briare to separate them but neither Plaintiff nor Briare touched the other.

25. For the first time since reporting Briare's harassment to management on Plaintiff's first day at Defendant's West Palm Beach location, management asked Plaintiff and everyone who witnessed the altercation to write down statements.

26. Thereafter, three (3) out of the four (4) managers of Defendant's West Palm Beach location sat and met with Plaintiff. Plaintiff once again recounted and restated the hostile work environment she had to endure due to Briare's discriminatory behavior and the lack of any action taken by management. The two (2) managers who Plaintiff previously reported Briare's discriminatory behavior to confirmed with the third manager that Plaintiff had continuously been reporting Briare's harassment of Plaintiff to them. The meeting concluded with Plaintiff being sent home.

27. The next day, February 11, 2016, Plaintiff received a call from the General Manager that her employment with Defendant, a company she had worked for since 2006, had been terminated effective immediately.

28. Briare was permitted to return to work for Defendant on February 12, 2006 and upon information and belief bragged about pushing Plaintiff to the breaking point and causing Plaintiff to be terminated stating: "one down, two to go" –referring to the other two (2) remaining black female waitresses.

29. Plaintiff spoke to Defendant's District Manager and explained the repeat harassment she had endured by Briare and the lack of action on the part of management to address her complaints. Plaintiff stated she would be reporting the discrimination and harassment to Defendant's corporate office and was told nothing would likely happen. Only after Plaintiff explained she would be

further consulting with an attorney did the District Manager as Plaintiff to write a statement so that he could investigate the matter.

30. Plaintiff and other black female employees were being treated differently than Defendant's other white employees.

31. Defendant failed to protect Plaintiff, a member of a protected class, from repeat harassment on the basis of her race.

32. Defendant failed to protect and thereby condoned the discriminatory harassment of its black female employees.

33. Defendant's actions have subjected Plaintiff to a hostile work environment which altered the terms and conditions of Plaintiff's employment.

34. All conditions precedent to bringing this action have been performed satisfied or have been waived.

35. Due to Defendant's unlawful employment practices, it was necessary for Plaintiff to employ the undersigned attorneys to file this action for which Plaintiff will incur costs, expenses, and attorneys' fees.

## COUNT I
## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
## RACE DISCRIMINATION

36. Plaintiff adopts and realleges paragraphs one (1) through thirty-five (35) as if fully set forth herein.

37. Plaintiff is a black adult female and as such is a member of a protected class.

38. At all times material hereto, Plaintiff is subjected to repeat and constant harassment based on her race while employed byA Defendant starting in September 2015.

39. The harassment suffered by Plaintiff is sufficiently severe to create a discriminatorily abusive work environment.

40. Defendant knew, or reasonably should have known, about the hostile work environment as Plaintiff repeatedly reported the harassment to her immediate supervisors.

41. Defendant failed to take prompt remedial action to eliminate the hostile work environment even after repeat reports from the Plaintiff and other employees similarly situated as the Plaintiff in her protected class.

42. The Defendant's activities, as incorporated herein, constitute a continuing series of related discriminatory acts and a systematic pattern and practice of discrimination of Plaintiff based on Plaintiff's race.

43. As a direct and proximate result of Defendants' actions described herein, Plaintiff has suffered damages, including but not limited to, loss of income, severe emotional distress, humiliation and mental anxiety for which she demands compensation.

## COUNT II
## VIOLATION OF 42 U.S.C. 1981

44. Plaintiff adopts and realleges paragraphs one (1) through thirty-five (35) as if fully set forth herein.

45. Plaintiff is a member of a protected class as a black female.

46. At all times material hereto, Plaintiff is subjected to repeat and constant harassment based on her race while employed by Defendant starting in September 2015.

47. Supervisory and management personnel of the Defendant intentionally subjected Plaintiff to unequal and discriminatory treatment by creating a hostile and abusive work environment that altered Plaintiff's employment.

48.     The Defendant violated section 1981 of the United States Code (42 U.S.C. §1981) by engaging in unlawful employment practices prohibited by 42 U.S.C. §1981 by creating, condoning and perpetuating the discriminatory hostile work environment which interfered with Plaintiff's contractual rights based on her race.

49.     The Defendant violated 42 U.S.C. §1981 by engaging in unlawful employment practices prohibited by section 1981 by creating, condoning and perpetuating the discriminatory hostile work environment which interfered with Plaintiff's contractual rights as Plaintiff was treated less favorably than similarly situated employees outside of the Plaintiff's protected class.

50.     Supervisory and management personnel of the Defendant subjected Plaintiff to unequal and discriminatory treatment by creating a hostile and abusive work environment that altered the conditions of Plaintiff's employment by knowingly failing and refusing to protect her from the hostile and abusive conditions, despite repeat reporting of the same by Plaintiff and other members within her protected class.

51.     Defendant acted with malice and reckless disregard or deliberate indifference to Plaintiff's rights under 42 U.S.C. §1981 and the Civil Rights Act of 1991.

52.     As a direct and proximate result of Defendant's conduct in intentionally condoning the racial harassment and discrimination of Plaintiff, Plaintiff has suffered damages including but not limited to, loss of income, severe emotional distress, humiliation and mental anxiety for which she demands compensation.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, SANDY JULES, respectfully requests that this Court:

A.     Grant a permanent injunction enjoining Defendant, RED LOBSTER

RESTAURANTS, LLC, its managers, officers, successors, assigns, and all persons in active concert or participation with them, from discriminating based on race or engaging in any other employment practice that discriminates on the basis of race or natural origin

      B.      Order Defendant, RED LOBSTER RESTAURANTS, LLC, to institute and carry out policies, practices, and programs which provide equal employment opportunities for victims of race and/or national origin based harassment and which eradicate the effects of its past and present unlawful employment practices.

      C.      Order Defendant, RED LOBSTER RESTAURANTS, LLC, to make Plaintiff whole by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of the unlawful employment practices, including but not limited to reinstatement or front pay, including pre-judgment interest.

      D.      Order Defendant, RED LOBSTER RESTAURANTS, LLC, to pay compensatory damages to Plaintiff in an amount to be determined at trial to compensate Plaintiff for past and future pecuniary losses resulting from the unlawful practices described herein, including but not limited to, emotional pain and suffering, inconvenience, humiliation, loss of self-esteem and loss of civil rights.

      E. Order the Defendant, RED LOBSTER RESTAURANTS, LLC, to pay Plaintiff punitive damages for its malicious and reckless conduct as described herein, in amounts to be determined at trial;

      F. Award Plaintiff her reasonable attorney's fees, expenses, and costs for this action.

      G. Grant such further relief as the Court deems necessary and proper in the public interest.

(*this space intentionally left blank*)

**JURY TRIAL DEMAND**

SANDY JULES demands a jury trial on all questions of fact raised by its complaint.

Dated: October 16, 2017

        Respectfully submitted,

        K/S Attorneys at Law

        /s/ Tina El Fadel
        Tina El Fadel, Esquire
        Florida Bar # 0091039
        4800 N. Federal Highway Suite B 103
        Boca Raton, FL 33431
        PH: (561) 939-8042 Fax: (561) 750-5083
        tina.elfadel@ks-law.com
        eservice@ks-law.com